Judge Cake:
The plaintiff’s cause has a bad aspect. I am very much inclined to believe, that he has purchased from the children of Findlay, their interests in the land, under the idea that the old lady had a life estate, when he knew that she had not; and is now availing himself of his legal title, to turn her out, and thus break up the family understanding and arrangement. Having this impression of the plaintiff’s conduct, I have examined this case with every disposition to find some ground, on which I could feel authorised to defeat his object; and I thought I had found it, in the discretion which equity exercises, on many occasions. It struck me, during the argument, that this was of that class of cases, where the application is to the sound discretion of the Court, and not ex debito justitise; especially as there was a writ of partition under the statute. The first authority I found, seemed to encourage this idea. It is the case of Cartwright v. Pulteney, 2 Atk. 380, where Lord Hardwicke says, “ Where a bill is brought for partition, a party must shew himself entitled; and this is stricter than at law, where seisin is sufficient. Here the reason is, because conveyances are directed, and not a partition only; *364 which makes it discretionary in this Court, whether, where a plaintiff has a legal title, they will grant partition or not; and where there are suspicious circumstances in the plaintiff’s title, the Court will leave him to law.” This looked very much like placing the subject on the ground of specific execution. But on looking more deeply into the subject, I find that the law is differently settled by many cases. There is no act of Parliament in England, or statute in this country, which gives equity jurisdiction in this case. It has been assumed in partition, as well as in dower, from the extreme inconvenience and difficulty of proceeding at law. Agar v. Fairfax, 17 Ves. 551. In exercising this jurisdiction, the Courts have considered themselves bound by the principles, which govern cases 'of partition at law; and accordingly, wherever a party shews a legad title, they consider him entitled, as of right, to a partition. In Parker v. Gerrard, Ambl. 236, Sir Thomas Clark held, that a bill for a partition was matter lof right; and though the interest of one party was so inconsiderable, that he would rather have given it up than incur the expense of the suit, he was compelled to make partition, and pay an equal share of the costs. The Master of the Rolls laments the injustice the Court is frequently obliged to commit, having no discretion on the subject. In Turner v. Morgan, 8 Ves. 143, the bill was for partition of a house. Lord Eldon, considering that it would be very injurious to the party defendant, who owned a third of the house, proposed a compromise. But when that failed, he said, “ it cannot be denied, that a partition is due now, under the statute, to divide this species of inheritance; and I know no rule, but by considering a commission as j’due, in a case where the writ would lie.” In Baring v. Nash, 1 Ves. Beam. 550, the Vice Chancellor, speaking of the right which the part owner of an estate, however minute his interest, would have to compel a partition at law, says, “Then how does it stand upon principle? Courts of Equity have a concurrent jurisdiction with Courts *365 of Law, upon partition, more convenient where the interest is much divided. With that concurrent jurisdiction, is a Court of Equity to adopt the principle which prevails at law, or to act upon a different principle?” (After some further observations, he repeats the remark of Lord Eldon, in Turner v. Morgan, that he knew of no rule, but to grant a commission where the writ would lie; and adds,) “certainly referring to the rule of law, by analogy to which, the conduct of a Court of Equity should be regulated; these authorities establishing the principle, that a rule of this kind, involving the right' of an individual, should be the same, in both Courts; and therefore tenant for years, if he would be entitled to partition at law, ought to have it in equity.” He then proceeds thus; “ the only authority that appears to consider the bill for partition, as matter, not of right, but of discretion, is a passage in Cartwright v. Pulteney,” (the case I first quoted.) After repeating Lord Hardwicke’s remark, he says, “ this must be taken with the context. It is stated to be discretionary, where there are suspicious circumstances in the plaintiff’s title; as in that case, a suspicion of forgery. Where the legal title is under such suspicious circumstances, a Court of Equity may well pause in directing partition. But if the title is clear, a partition is matter of right; and it is expressly stated in Parker v. Gerrard, that there is no instance of not succeeding in such a bill, but where there is not proof of title in the plaintiff; and in the case of Lord Bath, the Court gave leave and time for the plaintiff to make out his title.” These authorities compel me to consider it settled law, that where a plaintiff comes into equity for partition, shewing a clear legal title, it is matter of right and not of discretion.
Let us enquire, then, into the plaintiff’s legal title. The deeds made by the four sons, state that they had sold to the plaintiff, for the sum of $ 300 each, all their right, title, interest and claim, in and to a certain tract of land lying in the county of Wythe, adjoining the lands of D. Wise ley, *366 containing 215 acres, being the same tract on which their father lived, at the time of his death, and which he devised to his wife during her life. The two deeds from the mar-daughters and their husbands, differ both in the words of conveyance and of description. They are more formal in the first, and more exact in the last. There can be no question about them. As to the deeds of the sons; though defective in the formal words of conveyance, I presume they are sufficient; as they clearly express that the bargainors had sold all their interest for a valuable consideration, and this was sufficient at common law to raise an use. But do these deeds sufficiently describe the land ? It is, 215 acres, lying in Wythe county, adjoining the lands of the plaintiff, being the same tract on which their father lived at the time of his death; and if the description had stopped here, there can be little doubt, I presume, that it would have been sufficient, so to designate the land, as to have made the deeds valid. But in further description, they add, “and which he devised to his wife during life;” and when we come to inspect the will, we find that no land was devised to her for life; but this same tract, to her for years only. This, however, cannot, I think, render that bad which was good without it, as utile per inutile non vitiatur. It seems to me, therefore, that the deeds convey to the plaintiff, the legal title. The argument, that this recital in the deed shewed the understanding of the parties, as to the interest they were selling, may be very true, and might be very important, upon a bill filed to set aside these deeds for fraud or mistake. But when we are upon the legal title purely, I do not think it a consideration of weight; for the deeds, certainly, (if they operate, at all,) convey all the right, title and interest of the bargainors, whatever that may be.
With respect to the statute against buying and selling pretensed titles, I do not think it has any application. The widow was in under the will; claiming no other estate than it gave, though mistaking that for a larger interest than it *367 really was. Her title was not adversary to that of the sons. She had entered lawfully, held lawfully, and had done nothing, which even the other party could have elected to consider a disseisin. The sons, then, had a right to sell, the plaintiff to buy, and the deeds passed their interest.
As to the deed of the youngest son being made after the institution of the suit, I see nothing in it. The plaintiff had already a right, under the other deeds, to come for partition. As to the hardship of turning the widow out in her old age, though I disapprove of the conduct of the plaintiff, and generally of those who thus intrude themselves into these family matters; yet I cannot think the widow has been, or will be, so hardly dealt by, as the counsel seemed to think. She has had the whole land, for 24-years, without rent. She still holds the whole; and cannot be turned out until her fair dower is assigned her; to which she has an unquestionable claim.
Judge Green:
The will of James Findlay gave to his wife an estate for years only, in the land in question, determinable by her death, before the youngest child attained his age of 21 years. The freehold and inheritance descended upon the children who were seised; and the widow’s holding over, after the youngest child attained his full age, did not give her a possession adversary to them, or disseise them; especially if she held over with their assent, as seems to be the fact. Entering by title under the will, she could not, after the expiration of her term, hold adversely to the reversioners, without doing some act which amounted to a disseisin, as by conveying to another. She has done no such act; but on the contrary, in her answer, she claims only under the will, a larger estate indeed than she is entitled to, but still under the will. Such a claim cannot disseise the reversioners, or give her a possession adversary to *368 them. The children might therefore effectually convey their interests in the land, by deeds of bargain and sale.
The conveyances made by Glass and wife, and Henderson and wife, were made some time after the deeds were 7 made by the four sons of James Findlay. These deeds state the devise to Mrs. Findlay, truly, and convey all the right, title and interest of the grantors in the land, to the appellant. No question can be raised, upon the terms of those deeds, whether they passed the whole interest of the grantors or not. The conveyances from the four sons (one of which was made after the youngest child of James Findlay came of age,) state that the grantors have sold all their right, title and interest, in the land, to the appellant; but in describing the land, they use the expression, “which he” (James Findlay) “has devised to his wife, during her life.” The land, however, is otherwise sufficiently specified, by describing it as that on which James Findlay liyed at the time of his death. These deeds also convey to the appellant, all the interest of the grantors in the land. The operative words of the deeds, are, that they had sold all their right, title and interest, in and to the land where» .on James Findlay lived at the time of his death. The mistake in the further description of the land, or of the estate held by James Findlay’s wife in the land, cannot impair this operation of the deed. Thus in the Earl of Clanrickard v. Lisle, Hob. 273, husband and wife, entitled in right of the wife, to a reversion in fee, recite in the deed that the wife had title of dower in the land, and grant all their estate in the said third part of the land. It was determined that a third part of the reversion in fee, passed by the deed. This case is stronger than the case at bar. So in Bartlett v. Wright, Cro. Eliz. 299., A. granted to B. all his house and two yard lands in C. in the possession of D. Two acres were not in the possession of D. but all the rest were. It was adjudged that the two acres, not in the possession of ,D. passed by the deed. In the first of *369 these eases, the general words of ihe grant, all their estate, had their full effect, notwithstanding the mistake in the description of that estate, as being smaller than it really was; and in the other, the whole of the land passed by the words, “ all his house and two yard lands in C.” notwithstanding the mistake in describing it as in the possession of D.
The plaintiff, having a perfect legal title to a part of the land, filed his bill for a partition; and it is insisted that he is not entitled to it, in a Court of Equity, because he has been guilty of a fraud upon the children, who have conveyed their interests to him, in procuring the conveyances, such as they are, from them, acting under the mistaken belief, that their mother had a life estate in the land, and only intending to sell their reversions, subject to this life estate. In respect to the conveyances by the four sons, it appears to me, that they and Ihe purchaser acted under a mutually mistaken opinion, as to the extent of Mrs. Findlay’s estate in the land; and that they thought they were selling, and he that he was purchasing the land, subject to an estate in her for life, and this was the interest he paid for. It seems to me, that, in justice, the proportions of these children in the land, ought to belong to them, not to their mother during her life. But this is a question not fit to be decided in this ease, for reasons whieh will be hereafter stated.
Wiseley seems to have been informed of the true effect of Findlay’s will, after he took the deeds of the sons, and before he took deeds from the daughters of Findlay; and accordingly, varied the phraseology of the deeds from the latter, so as to conform truly to the terms of the will. But he seems to have encouraged the opinion on the part of the grantors, that Mrs. Findlay had a life estate, whilst he procured from them deeds whieh passed an immediate interest. In relation to those, too, I should doubt, whether in justice, the grantors ought not to enjoy the lands during the life-time of Mrs. Findlay, if this were a proper *370 occasion for deciding that question. I observe, however, that the husband of one of these daughters admits that he made no reservation.
An application to a Court of Equity for partition, does not seem to be an application to the sound discretion of the Court, to be granted or refused according to the circumstances of the case, as in cases of specific performance, and other cases; but to be due ex debito justitise. It is a remedy substituted for the difficult and perplexed remedy by writ of partition. I doubt whether a writ of partition has ever been prosecuted in Virginia. Indeed, the form of the writ has never been devised in the General Court, as the statute, authorising the writ, directs. The only indispensable requisite, to entitle the plaintiff to relief, in such cases, is, that he shall shew a clear legal title. If his title be disputed or doubtful, (as if there be a question, whether the deeds under which he claims are forged, or if his title depends on difficult and doubtiul questions of law, which are emphatically proper for a Court of Law,) the decree for partition is suspended, until he establishes his title at law, not in a writ of partition, but by ejectment or other legal remedy. And if, in such proceeding, he establishes the genuineness of his title papers, or the questions of law, on which his title depends, are decided in his favor, he returns to the Court of Equity, and partition is decreed according to his established rights. These propositions are sustained by the cases cited in Wilkin v. Wilkin, 1 Johns. Ch. Cas. 111, and in Philips v. Green, 3 Johns. Ch. Cas. 302. To what end, in this case, should Wiseiey be sent to law ? It would only involve the parties in costs. There he must- inevitably recover the portion of the land to which he has a legal title, and the rents and profits, unless the widow had a right to the possession until her dower was assigned; an undivided portion, to be sure, which he might occupy and enjoy, after the assignment of dower, (if the widow be entitled to dower,) in common with the others entitled. This would be a state *371 of things beneficial to none of the parties concerned. What is opposed to the appellant’s application for a partition ? Not any right vested in the widow, who is in possession of the whole of the land; but an equitable claim on the part of some of the children, not in possession, to the temporary enjoyment of the land; and this is not clear or admitted, but depending upon an alledged mistake in making the conveyances, or fraud of the appellant. A refusal to decree partition, is a decision in faVor of the widow, who has no right, in consequence of an alledged right in others; a decision in no way beneficial to those who claim this right. They have no right at law, and cannot there recover the possession by any proceeding. If they have any right, it can only be asserted in a Court of Equity, by a bill impeaching the conveyances, upon the ground of mistake or fraud. A partition will present no impediment to this remedy. So that, a refusal to decree a partition, cannot benefit those who claim an equitable right against the appellant; nor will a decree for partition prejudice their rights. A partition is asked against the widow and children, who have not conveyed their rights. They have no rights or equity, adverse to the rights of the plaintiff. Even the maxim, that he who asks equity must do equity, (if it were applicable to such a case as this,) extends only to doing equity to the same person of whom it is asked, and not to persons against whom nothing is claimed or asked. Francis’s Maxims, Max. 1. The plaintiff was, therefore, entitled to a decree for partition.
It is no objection, that he acquired the legal title of two of the heirs, subsequent to the institution of the suit. He had, before the suit was instituted, acquired the legal rights of four of the heirs, which is sufficient to support his bill. If he had not acquired the rights of the other two, their portions would have been assigned to them. Having acquired their rights, pendente lite, their portions should now be assigned to him.
But the widow is entitled to dower in the land. The devise to her of the whole land for years, even, if it had *372 been expressly declared in the will, to be in lieu of her dower, would not, although she took the land under the will, have been such a jointure as could bar her right of dower, under the 11th section of the act of 1792, ch. 94. Nor can any provision made by her husband’s will, in personal estate, accepted by her, bar a widow of dower in his real estate. „ The act of 1792, ch. 92, § 25, which declares, that unless the widow shall renounce the provision made for her by her husband’s will, she shall have no more of his slaves and personal estate, than is given her by the will, is confined, in express terms, to personal property; and this was decided in Blount v. Gee, cited by Judge Tucker, in Ambler v. Norton, 4 Hen. & Munf. 23. Nor is the widow liable to account for the rents and profits of the lands. This appears to be a plantation belonging to the mansion house of her husband; and under the act of 1792, ch. 94, § 2, she is entitled to occupy it, without responsibility for rent, until dower is assigned to her.
The Court below ought to have pronounced a decree, assigning dower to the widow, and a partition, subject to her right of dower.
Judges Coalter and Cabell, concurred in the following, which was entered as the decree of the Court:
The Court is of opinion, that the defendant, Mary Find-lay, the widow of James Findlay, was entitled, under the will of her husband, to the tract of land in question, only until his youngest child attained the age of 21 years; and that she is entitled to dower of the said lands, and to occupy the same, without being liable for the rents thereof, until her dower be assigned to her. And the Court is further of opinion, that the appellant was entitled to a partition, subject to the widow’s right of dower; and that the Court below ought to have pronounced a decree, assigning dower to the said Mary, in the said land, and for making a partition thereof, according to the rights of the respective parties, and letting them into possession of their respective portions, to be held in severalty, subject to the widow’s *373 dower. Therefore, the decree is to he reversed, so far as it conflicts with this opinion, with costs, and the cause remanded to be further proceeded in, according to the principles of this decree. But this decree is not to prejudice any of the parties, in any suit that they may be advised to bring against the said TViseley, upon the ground of fraud or mistake, in relation to the terms of the conveyances made to him.